IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| BESSIE L. GLOVER, | ) Civil Action No. 3:07-4021-CMC-JRM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| DEPARTMENT OF CORRECTION; AND | ) |
| JAMES PAGES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff, Bessie L. Glover ("Glover") filed this pro se action on December 14, 2007. She appears to allege claims under alleges claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"); the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.; and the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA").[1] Defendants, South Carolina Department of Corrections ("SCDC") and James Pages ("Page"),[2] a Hospital Administrator II at the Gilliam Psychiatric Hospital ("Gilliam") of the SCDC, filed a motion for summary judgment on January 22, 2009. Glover was informed on January 23, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

[2] The parties refer to this party by the last name of "Pages" at times and "Page" at others. From documents generated by him, it appears that his correct last name is "Page." See Memo from Page to Glover dated May 3, 2005 and Memorandum to staff members dated April 5, 2005 (attachments to Complaint).

result in dismissal of this action. On January 26 and 28 and on February 27, 2009, Glover filed responses in opposition to Defendants' motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), cert. denied, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there

2

is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits (see Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., supra. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Servs. Co., 80 F.3d 954 (4th Cir. 1996).

## FACTS

1.   Glover is an African-American female who was approximately fifty years old at the time of the alleged incidents.

2.   On June 9, 2004, Glover applied for a job as a Human Services Assistant ("HSA") with the South Carolina Department of Disabilities and Special Needs ("SCDDSN"). Defendants' Ex. A.[3]

3.   On June 16, 2004, Glover applied for a position as a corrections officer at SCDC.

---

[3]References to "Defendants' Ex. __" are to exhibits to Defendants' motion for summary judgment.

4. On August 2, 2004, Glover began working as a HSA II for the SCDDSN. Defendants' Ex. B. Glover resigned from her job as a HSA II on September 13, 2004. In her resignation letter she stated that she had "know [sic] one to take care of my aunt now." Defendants' Ex. D. On her Exit Questionnaire, Glover checked that "Family Circumstances" contributed to her decision to leave SCDDSN. Defendants' Ex. E.

5. Glover began training for her job as a corrections officer for SCDC on September 13, 2004. On September 22, 2004, she was injured during training while pulling a 150 pound "dummy" bag. Complaint at 3.

6. Glover was treated at the emergency room at Palmetto Health Richland Hospital for an acute lumbar sacral strain. A physician there restricted her to light duty until September 27, 2004. The same day, Glover presented the emergency room paperwork to the SCDC Training Academy Center and she was directed to go to Lexington Medical Center. A physician there instructed Glover to take three days off work. Id.

7. Upon her return to work at SCDC, Glover was assigned to the mailroom for three weeks, and then was assigned to work in the Warden's office for four months. Id.

8. On January 2, 2005, Glover was promoted to a Human Service Specialist/Clinical Correctional Counselor at Gilliam. See Termination Letter (Defendants' Ex. I).

9. Defendants assert (but have not provided any supporting documentation) that climbing steps was an essential function of Glover's job.

10. On May 2, 2005, Glover's physician completed a Workers' Compensation form in which he checked that she was medically qualified to perform the essential duties of her job, but might need accommodations for her limitations. The limitations noted were that Glover was to

perform no bending, no climbing of ladders/poles, only limited stooping/squatting, no lifting over 15 pounds, and no standing longer than 3-4 hours. Her previous restrictions were continued. It was noted that the medical recommendation was temporary and Glover was to return for an appointment in four to six weeks. Attachment to Complaint.

11. On May 3, 2005, Page wrote a memorandum to Glover stating:

> I am in receipt of your temporary medical restrictions. I have conferred with Human Resources and based on the restrictions provided, it does not appear you will be unable to do your required job duties.
>
> Subsequently, you are expected to report to work and perform your duties as assigned.

Attachment to Complaint.

12. On an unknown date, another Workers' Compensation form was completed adding a work restriction of no climbing stairs. See Attachment to Complaint.

13. On May 25, 2005, Dr. Todd Jarosz ("Jarosz") wrote that Glover was advised to return to work on May 30, 2005. Attachment to Complaint.

14. On May 27, 2005, attorney J. Robin Turner (who does not represent Glover in the current action) wrote a letter to Page and others (attachment to Complaint) stating:

> My main immediate concern is that Ms. Glover cannot and should not be required to climb stairs. This restriction was apparently not included in the original 5/2/5 work restriction form from Dr. Jarosz, apparently because it was not known that climbing stairs frequently was going to be a requirement of [Glover's] assignments, but then the restriction was subsequently added (to the same 5/2/5 form) by the physician's office when they became aware of the problem, all of this creating some confusion at the Department about appropriate work modifications.
>
> She has aggravated her already poor condition, probably by the stair-climbing, and has been sent home for a few days to rest, but when she

5

> reports back and if she is asked to work, I ask you to please have some
> changes in place for her consistent with the enclosed Doctor's orders.

15. The last day that Glover "physically" worked at SCDC was May 31, 2005. Her last day of compensation (including pay continuation, using annual and sick leave) was June 1, 2005. Employer's Disability Employment Status Report (Attachment to Doc. 34).

16. On June 1, 2005, Glover was placed on leave without pay and she began to draw temporary total benefits through Workers' Compensation. See Defendants' Motion for Summary Judgment at 2 and Defendants' Ex. M.

17. Glover's physician, Dr. Jarosz, completed an Attending Physician's statement on July 8, 2005, in which he opined that Glover could work with restrictions of no bending, no climbing stairs, limited stooping/squatting, lifting up to fifteen pounds, and no standing for longer than four hours. Attachment to Plaintiff's statement of facts (Doc. 35).

18. Glover was terminated from SCDC on July 12, 2005. The termination letter provided:

> It is my understanding that you received a work-related injury during your basic training at the academy. As a result of your injury and your inability to perform your job duties, you have used all of your leave accruals (52.53 Sick Leave and 56.28 Annual Leave). Once your leave was exhausted, you were placed on leave without pay beginning June 1, 2005.
>
> According to SCDC Policy, ADM-11.08, Employee Leave, a probationary employee is allowed 80 hours leave without pay for an injury or illness. You have exceeded the maximum number of hours permitted by policy.

See Defendants' Ex. I (Termination Letter).

19. On an undated form, it was reported that Glover was examined by her physician on July 25, 2005. Glover's physician opined that she was medically qualified to perform essential duties of her job with the accommodations of no bending, no climbing ladders/poles, limited

6

      stooping/squatting, lifting only up to fifteen pounds, and no standing longer than three to four hours. Her previous restrictions were continued. Attachment to Complaint.

20. On approximately February 15, 2007, Glover filed a Charge with the South Carolina Human Affairs Commission ("SCHAC") and the Equal Employment Opportunity Commission ("EEOC"). She asserted that discrimination took place on July 14, 2005, and was based on her race, age, and disability. Specifically, she wrote:

> I am Black and 50 years old. I worked for the above cited employer for approximately one year. During my tenure I incurred a work related injury which resulted in me exhausting all of my sick and annual leave. Commencing June 1, 2005 I was placed on leave without pay.
>
> I was discharged because my employer classified me as a probationary employee. According to their guidance a probationary employee is allowed 80 hours leave without pay for an injury. I exceeded this timeframe and was discharged as of July 12, 2005. I believe because I worked with the agency prior I should of not been considered a probationary employee.
>
> I believe my employer did not provide me a reasonable accommodation for my injury. I have been discriminated against because of my injury, age 56 and race, Black. This was done in violation under Title VII of the Civil Rights Act of 1964, Age Discrimination in Employment Act of 1967 and the Americans with Disabilities Act of 1990, as amended.

Attachment to Complaint.

21. Glover continued to receive payments of Workers' Compensation through March 26, 2007, and she settled her workers' compensation case in April 2007. See Defendants' Exs. M, N, and O.

22. On October 31, 2007, a Right to Sue Notice was issued by the EEOC. Attachment to Complaint.

**MOTION FOR SUMMARY JUDGMENT**

7

Glover appears to allege that she was terminated based on her race and/or age. She also appears to allege that she was terminated based on a disability and/or that Defendants failed to accommodate her disability in violation of the ADA. Glover claims that she was a permanent employee and thus should not have been terminated, but should have been called back to work when she was released to work by her physician on March 8, 2006. See Complaint and Plaintiff's Statement of Facts (Doc. 35). Defendants contend that they are entitled to summary judgment because: (1) Glover was a temporary employee of SCDDSN; (2) she was a probationary employee of SCDC; (3) she fails to show that she was discriminated against based on her age in violation of the ADA; (4) she has no basis in fact to claim racial discrimination under Title VII;[4] and (5) she cannot prove an ADEA claim.[5]

A.     Employment Status

Glover appears to allege that she was a permanent employee of the State of South Carolina at the time she was terminated, such that she could not be terminated for having exceeded her maximum amount of leave. Defendants contend that Glover was a temporary or probationary employee at the time of her termination, such that her termination was proper, as she exceeded her maximum amount of leave.

---

[4] Defendants also contend that Glover fails to show that she was discriminated against based on her sex. Review of the Complaint, however, does not reveal that Glover asserted any claim of sex discrimination. Additionally, Glover did not include a claim for sex discrimination in her EEOC Charge and she does not address such a claim in her memorandum in opposition to summary judgment.

[5] Page has not made any arguments concerning individual liability under the ADA, ADEA, and/or Title VII.

Glover fails to show that she was a permanent employee of SCDC at the time of her termination. On her SCDC employment application, Glover checked that she read and understood the following condition of employment:

> I understand that I will accept an initial duty assignment (post, duties, tasks) and workdays/shift assignments (days off/hours of work) required by my job description as may be needed to accomplish the mission of the Department of Corrections. **During my new-hire twelve month probationary period**, both my duty and workday/shift assignment may be frequently changed to meet training needs and evaluation requirements.

Defendants' Ex. F at 8 (emphasis added). Glover began working for SCDC on September 13, 2004. She was terminated on June 12, 2005, less than twelve months later. The probationary period refers to the first twelve months of state service for new employees. See SCDC Policy ADM-11.06 (13). A probationary employee who works eight to twelve hours a day is limited to a maximum of eighty hours of leave without pay. SCDC Policy ADM-11.08 (12.3). Additionally, a probationary employee has no grievance rights. SCDC Policy ADM-11.06(5).

Glover appears to argue that her employment at SCDDSN (her job immediately before she began working for SCDC) should be counted as state service such that she had worked for the State of South Carolina for at least twelve months and was a permanent employee. Glover fails to show that her employment at SCDDSN was anything but temporary. See Defendants' Ex. C.[6] Even assuming that Glover's SCDDSN service should be counted towards a year of continuous service,

---

[6]Glover signed a "Temporary Employment Agreement" in which she acknowledged that she was appointed in a temporary status as a State Employee at SCDDSN; her employment could be terminated at any time; and she was not entitled to annual leave, sick leave, military leave, holiday entitlements, retirement benefits, or insurance benefits. She further acknowledged that, if she became a permanent employee, any time she had in a temporary status would not be made retroactive for annual leave, sick leave, or probationary period purposes. Defendants' Ex. C.

the earliest possible date that her continuous State of South Carolina service began was August 2, 2004, which was less than twelve months prior to her discharge.

Glover, referencing what appears to South Carolina Code of Regulations § 19-704.05,[7] appears to argue that she was transferred from another state agency to SCDC such that she was not in a probationary or trial status when she was "transferred" to SCDC. Glover's argument fails because she has simply not shown that she was transferred[8] from SCDDSN. Additionally, she has not shown that she was a "covered employee with permanent status in the class or unclassified State title." A covered employee is an employee who has completed the probationary period and has a "meets" or higher overall rating on their performance evaluation and has grievance rights. S.C. Code Ann. Regs. § 19-704.01.

B.    Title VII

Glover appears to allege that she was terminated based on her race in violation of Title VII. Defendants contend that Glover fails to present any evidence of racial discrimination.

Title VII makes it "an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect

---

[7]This provides:
Upon reassignment or transfer, an employee shall be in probationary or trial status; however, a covered employee with permanent status in the class or unclassified State title is not in probationary or trial status when the reassignment or transfer:
1.    Does not change the employee's class or unclassified State title; or
2.    Is to a class or unclassified State title in which the employee already holds permanent status in the class of unclassified State title.

[8]"Transfer is defined as the movement to a different agency of an employee from one position to another position having the same State salary range, or the movement of a position from one agency to another agency which does not require reclassification. (S.C. Code Ann. § 8-17-320(27)." S.C. Code Ann. Regs. § 19-704.05.

10

to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may proceed under ordinary principles of proof using direct or indirect evidence, or, in the absence of direct proof of a defendant's intent to discriminate, a plaintiff can employ the scheme outlined in McDonnell Douglas v. Green, 411 U.S. 792 (1973) to establish a prima facie case of discrimination by offering proof that:

   (1) she is a member of a protected class;

   (2) she was qualified for her job and her job performance was satisfactory;

   (3) she was subjected to an adverse employment action; and

   (4) the alleged adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination.

See Gairola v. Commonwealth of Virginia Dep't of General Serv., 753 F.2d 1281, 1286 (4th Cir.1985); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir.), cert. denied, 516 U.S. 870 (1995); McDonnell Douglas, 411 U.S. at 802. McDonnell Douglas provides that, once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory basis for the challenged employment action. McDonnell Douglas, 411 U.S. at 802. If the employer provides the required evidence of a non-discriminatory reason for the action, the plaintiff must then show that the proffered reasons were not the true reasons for the employment action, but were a pretext for discrimination. Id. at 804; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

  Glover fails to establish a prima facie case of discrimination based on her race because she fails to establish that the adverse employment action (her termination) occurred under circumstances

that raise a reasonable inference of unlawful discrimination. In her deposition, Glover merely testified that she believed Page took actions against her based on her race because "he didn't want to find me a [sic] easier job." Glover Dep. 44. Glover has offered no evidence that she was subjected to an adverse employment action based on her race or that persons outside her protected class were treated better than she was treated.

C.     ADEA

Glover appears to allege that she was terminated based on her age in violation of the ADEA. Defendants contend that Glover fails to establish a prima facie case of age discrimination because she cannot show that her performance was satisfactory and she is unable to proffer any direct or circumstantial evidence of discrimination.

Under the alternative burden-shifting method of proof of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973),[9] a plaintiff may establish a prima facie case of age discrimination under the ADEA by proving that: (1) she was a member of the protected class (at least forty years old); (2) she was performing her job to the legitimate expectations of her employer; (3) she suffered a materially adverse employment action; and (4) the materially adverse employment action occurred under circumstances that raise a reasonable inference of unlawful discrimination (e.g., that she was replaced by someone of comparable qualifications under forty years of age or significantly younger). See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996). If plaintiff establishes a prima facie case of employment discrimination, then defendant has the burden of articulating a legitimate, non-discriminatory reason for failing to promote her. O'Connor v. Consolidated Coin Caterers Corp.,

---

[9]Glover has not alleged that she has any direct evidence of discrimination.

84 F.3d at 719. If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual. See Reeves, 530 U.S. at 147.

Defendants appear to concede that Glover was in the protected class and was subjected to an adverse employment action. Glover, however, fails to show that she was meeting her employer's legitimate expectations at the time of her termination. Defendants provide that Glover was terminated for her violation of the attendance policy as reflected in her termination letter. See Defendants' Ex. I. Further, Glover fails to establish the fourth prong of her prima facie case, that she was terminated under circumstances that raise a reasonable inference of unlawful discrimination. She has not shown that she was replaced by someone under the age of forty or substantially younger than her or that her position remained open.

D.     ADA

Glover appears to allege that Defendants violated her rights under the ADA because Defendants failed to accommodate her disability by finding light duty work for her that did not involve climbing stairs. She may also be attempting to assert a wrongful termination claim under the ADA. Defendants contend that they are entitled to summary judgment as to Glover's ADA claims because she fails to show that she was a protected individual under the ADA, she cannot show that she was performing at a satisfactory level at the time she was terminated, and she cannot show that her termination occurred under circumstances that raise a reasonable inference of unlawful discrimination. They also appear to argue that Glover could not perform the essential elements of her job as evidence by the fact that she applied for disability insurance benefits.[10]

---

[10] On July 19, 2005, Glover applied for disability insurance benefits. See attachment to Plaintiff's January 26, 2009 pleading (Doc. 34).

13

Congress passed the ADA "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2). The Act provides:

> No covered entity[11] shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). According to the Act the term "discriminate" includes:

> denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant.

42 U.S.C. § 12112(b)(5)(B). A "reasonable accommodation" includes:

> job restructuring, part-time or modified work schedules, reassignment to a vacant position. . . and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B).

To establish a prima facie case of wrongful discharge on the basis of the ADA, a plaintiff must show that: (1) she is within the ADA's protected class; (2) she was discharged; (3) at the time of her discharge, she was performing the job at a level that met the employer's legitimate expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. <u>Haulbrook v. Michelin N. Am., Inc.</u>, 252 F.3d 696, 702 (4th Cir. 2001). To establish a prima facie case for failure to accommodate a disability under the ADA, a plaintiff must show that: (1) she was an individual who had a disability within the meaning of the statute; (2) her employer had notice of her disability; (3) with reasonable accommodation she could perform the

---

[11]Defendants have not argued that they are not covered entities.

essential functions of her position; and (4) her employer refused to make such accommodations. See Rhoads v. F.D.I.C., 257 F.3d 373, 387 n. 11 (4th Cir. 2001).

Glover fails to establish a wrongful termination or failure to accommodate claim under the ADA because she fails to show that she was an individual who had a disability within the meaning of the statute. Under the ADA, disability[12] is defined as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment....

42 U.S.C. § 12102(1). "A physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA. The statute requires an impairment that substantially limits one or more of the major life activities." Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 726 (5th Cir. 1995). "Major life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2 (i). "Substantially limits" is defined as:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

---

[12]The question of whether a plaintiff is disabled under the ADA, "and therefore can bring a claim under the statute, is a question of law for the court, not a question of fact for the jury." Rose v. Home Depot U.S.A., Inc., 186 F.Supp.2d 595 (D.Md. 2002) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 268 (4th Cir. 2001) (Rehabilitation Act case)).

15

29 C.F.R. § 1630.2 (j)(1). The ADA regulations specify three factors relevant in considering whether an impairment substantially limits a major life activity: "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2); see also Bolton v. Scrivner, 36 F.3d 939, 943 (10th Cir. 1994), cert. denied, 513 U.S. 1152 (1995). Glover fails to show that her injury or impairment substantially limited one or more of her major life activities.

Additionally, there is no indication that Glover's impairment was anything other than temporary, such that her impairment did not qualify as a "disability" under the ADA. See Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 468-471 (4th Cir. 2002) (temporary impairments usually do not fall within the ADA's definition of disability); Roush v. Weastec, Inc., 96 F.3d 840, 843-844 (6th Cir.1996)(Where plaintiff underwent a number of surgeries and medical procedures which corrected her kidney condition, her condition was temporary, was not substantially limiting, and did not constitute at a disability under the ADA); Halperin v. Abacus Tech. Corp., 128 F.3d 191, 199 (4th Cir.1997)("[T]he term 'disability' does not include temporary medical conditions, even if those conditions required extended leaves of absence from work"). As noted above, Glover's injury occurred in September 2004. Glover admits that by early 2006 she was released to return to work. See Complaint at 4.

## **CONCLUSION**

Based on the foregoing, it is recommended that Defendants' motion for summary judgment (Doc. 31) be **granted**.



Joseph R. McCrorey
United States Magistrate Judge

May 8, 2009
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

17

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).